IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| JENNIFER SWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:07-cv-70 |
| | ) | |
| WABASH NATIONAL CORP., | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment (DE #23) filed by Defendant Wabash National Corporation. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED** and the Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's complaint. The oral argument originally scheduled for July 22, 2009, is hereby **VACATED** and the Clerk is **FURTHER ORDERED** to close this case.

BACKGROUND

On November 13, 2007, after filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue notice, Plaintiff Jennifer Swartz ("Swartz") sued her former employer, Defendant Wabash National Corporation ("WNC"). Swartz alleges violations of the Family Medical Leave Act ("the FMLA"), 29 U.S.C. § 2601, *et. seq.*, the Equal Pay Act ("the EPA"), 29 U.S.C. § 206, *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, including the Pregnancy Discrimination

Act ("the PDA").

On April 10, 2009, WNC moved for summary judgment on all claims. (DE # 23). In response, Swartz abandoned several of her claims, but argued that this Court should deny summary judgment on her FMLA and PDA claims. (DE # 28).

An oral argument was initially set for June 18, 2009 on the Motion for Summary Judgment, but was later continued without date. Having been recently reassigned the case, and now familiarized with the nature of the action, I have determined that oral argument on the pending motion is unnecessary. As such, the Court vacates the anticipated oral argument, and now rules on the matter in writing.

DISCUSSION

Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*,

840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

WNC is a manufacturer of semi-trailers and is headquartered in Lafayette, Indiana. (Gipe Aff. ¶ 2-3, DE # 25-2.) Although she received a Bachelor's Degree from Purdue University and worked for thirteen different employers, Swartz had no experience in semi-trailer manufacturing or purchasing when WNC hired her in 2000 as an invoicing clerk.[1] (Swartz Depo. 13:14-14:17, 27:11-25, 28:1-5, DE # 25-5.) From 2000 to 2002, Swartz's duties as an invoicing clerk required her to review sales orders, enter order information into the system, and print and mail invoices. (*Id*. at 28:9-14.) The position did not provide Swartz with any purchasing or manufacturing experience. (*Id*. at 30:3-9.)

On March 11, 2002, Swartz took FMLA leave for the birth of her first child. (*Id*. at 28:18-23.) She returned to work on April 23, 2002, and was soon promoted to the position of Inbound Logistics

---

1  When WNC hired Swartz, she was provided a copy of the company's 2000 employee handbook, which outlined its Equal Employment Opportunity ("EEO") policy. (Swartz Depo. 16:1-18, DE # 25-5.) Again, on July 8, 2004, Swartz received an employee handbook containing WNC's EEO policies, and she acknowledged by way of signature her receipt of the same. (*Id*. at 17:3-23.)

Coordinator. (*Id.* at 29:2-7.) As a result of her promotion, Swartz became responsible for auditing freight bills, performing data entry and logistics planning, and creating debit memos to suppliers for incorrect use of transportation. (*Id.* at 29:12-19.) Similar to her duties as an invoicing clerk, Swartz's position as the Inbound Logistics Coordinator did not provide her with any purchasing or manufacturing experience. (*Id.* at 30:3-9.)

On October 15, 2003, Swartz received a promotion to the position of Inbound Logistics Planner. (*Id.* at 30:10-14.) Once again, the position did not provide Swartz with any manufacturing or purchasing experience. (*Id.* at 30:20-31:14.) Instead, she was required to schedule deliveries and continue some of the duties she had as Inbound Logistics Coordinator. (*Id.*)

On September 27, 2004, WNC promoted Swartz to the position of Buyer. (*Id.* at 32:2-18.) For the first time, Swartz was required to perform manufacturing and purchasing duties. (*Id.* at 32:19-33:15.)

On August 29, 2005, Swartz was promoted to Senior Buyer. (*Id.* at 36:11-14.) As Senior Buyer, Swartz was responsible for purchasing lights, wiring, and electrical components, and working with suppliers, shipping, and accounts payable. (*Id.* at 33:18-24, 36:21-25.)

On January 10, 2006, Swartz took FMLA leave for the birth of her second child. (*Id.* at 39:8-12.) When she returned to work on February 27, 2006, Swartz was promoted to Commodity Supervisor, a promotion that was made retroactive to January 1, 2006. (*Id.* at

5

39:20-40:6.) At the time, Swartz's supervisor, Ryan Snyder, commented that Swartz's team, consisting of Lisa Callahan and Chris Leuck, was "week." (sic) (Snyder Email, DE # 30-4.)

In her capacity as Commodity Supervisor, Swartz was responsible for purchasing materials such as plastics, wood, fasteners, decals, liners, paints, and sealants. (Swartz Depo. 41:6-14, DE # 25-5.) Compared to other individuals, Swartz was responsible for a low purchasing amount ("spend"). (Snyder Aff. ¶ 7, DE # 25-3.) While Swartz was responsible for $1.5 million in spend, (Swartz Depo. 41:15-20, DE # 30-2) Commodity Manager Leslie Stonebraker was responsible for $300 million. (Stonebraker Aff. ¶ 10, DE # 25-9.)

Shortly after her promotion, Swartz complained to Snyder that her salary was less than that of two WNC Commodity Managers, Stonebraker and Brien Scheffee. (Swartz Depo. 75:16-76:6, DE # 25-5.)[2] In response, Snyder told Swartz that the Commodity Managers

---

2  WNC submitted evidence detailing the difference between Commodity Supervisors and Commodity Managers. The qualifications required to perform each of the two positions are as follows:

Commodity Managers must have more experience with commodities and vendors than Commodity Supervisors. They must be seasoned employees who already have experience buying, purchasing, conducting negotiations and pricing commodities. Some Commodity Managers at [WNC] have over twenty years of industry experience. Commodity Supervisors do not require the same level of experience. Buyers with [WNC] do not and would not move directly into a Commodity Manager position.

(Gipe Aff. ¶ 6, DE # 25-6.) The duties required of each position are as follows:

Commodity Managers were responsible for making all sourcing decisions, and soliciting bids from suppliers. Commodity Managers also had a greater amount of spend and were responsible for more complex components. Commodity Supervisors had a more limited role

6

were paid more because they had more experience and responsibilities than she did as a Commodity Supervisor. (Snyder Aff. ¶ 9, DE # 25-3.)[3]

On April 3, 2006, Swartz received her 2005 performance review, which was signed by Snyder. (Swartz 2005 Year-End Review, DE # 30-4 at 49-56.) According to the review, Swartz met expectations in all categories. (*Id*.) At the same time, Snyder and Swartz identified the goals Swartz would try to achieve in 2006. (Swartz 2006 Planning Discussion, DE # 30-2 at 17-22.) Snyder also identified Swartz's key strengths, which included her dependability, helpfulness, motivation, intelligence, common sense approach, and organizational skills. (*Id*. at 19.) Snyder further identified areas where Swartz could improve, recommending that she increase her familiarity with the products she purchases, and focus on not internalizing challenges to her decisions from other facets of the

---

and were not solely responsible for making sourcing decisions. (Snyder Aff. ¶ 11, DE # 25-3.)

3   Swartz testified in her deposition that she was unaware of the background and qualifications of WNC's various Commodity Managers. (Swartz Depo. 44:15-52:20, DE # 25-5.) At the time, the Commodity Managers in Swartz's department included Scheffee, Stonebraker, Brian Franscoviak, and Dan Mikels. (Snyder Aff. ¶ 10, DE # 25-3.) Undisputed evidence submitted by WNC indicates that these individuals possessed the following qualifications when they were promoted to Commodity Manager: Scheffee had 15 years of experience at WNC (*Id*.); Stonebraker had been with the company for 20 years and had 8 years of experience in purchasing (Stonebraker Aff. ¶¶ 3-8, DE # 25-9); Franscoviak had experience in both buying and purchasing at WNC and was recruited back to the company after a brief departure (Gipe Aff. ¶ 10, DE # 25-6); and Mikels was recruited from outside WNC for his twenty years experience in the semi-trailer and manufacturing industries. (Snyder Aff. ¶ 10, DE # 25-3.)

7

organization. (*Id*. at 20.)

That spring, WNC implemented a new software system, which resulted in problems throughout the company. (Gipe Aff. ¶ 3, DE # 25-6.) As a result, Commodity Managers and Commodity Supervisors had to purchase commodities and parts "blind" – without any information concerning commodity, supplier, price, or parts. (Snyder Aff. ¶ 13, DE # 25-3.) This required Commodity Supervisors and Managers to manually input their commodity codes and part numbers into the new system. (*Id.*)

In August 2006, Amy Atkinson, a Process Engineer at WNC, wrote an email to Miller and Snyder complaining that Swartz had failed to submit pricing information needed for the month end close. (Atkinson Emails, DE # 25-8 at 19-20.) As a result, Miller wrote an email to Kathy Gipe in Human Resources and executive Tim Monahan stating that the "Jennifer Swartz issue continues to worsen with a lack of daily job performance, poor attitude, poor teamwork and overall cooperation." (Miller Email, DE # 25-7 at 14-15.) Despite the concern, throughout 2006, neither Snyder nor Miller disciplined Swartz for her attitude or communication skills. (Snyder Depo. 136:19-21, 62:10-13, DE # 30-4.)

On September 26, 2006, Swartz met with Snyder and told him that she was struggling with the responsibilities of her Commodity Supervisor position, and the Buyer duties that she was performing. (Swartz Depo. 136:16-24, DE # 30-2.) During the meeting, Swartz

alleges that Snyder told her that she would not be able to perform her job with her pregnancy and children at home. (*Id*. at 131:16-18.) Swartz told Snyder that she would prefer to go back to the position of Senior Buyer, but she could not afford to take a pay cut. (Swartz Depo. 97:8-18, DE # 25-5.) Subsequently, Snyder transferred Swartz's supervisory duties to someone else, and Swartz again began working as a Senior Buyer. (*Id*. at 97:19-23.) Despite the reduction in her job responsibilities, WNC continued to pay Swartz at the level of a Commodity Supervisor. (*Id*. at 97:24-98:13).

Earlier in 2006, WNC's CEO had asked the company's management team to rank their employees in order to effectuate a 20% reduction in force. (Giromini Email, DE # 30-3 at 20.) As a result, sometime between May 2006 and January 2007, Miller directed each supervisor to rank each employee on a 1 through 3 scale, with 1 indicating that an employee exceeded expectations, 2 indicating that an employee was performing his or her job satisfactorily, and 3 indicating that an employee was a low performer. (Miller Aff. ¶ 6, DE # 25-4.) After the rankings were completed, Miller met with Snyder to determine which employees in his department were to be ranked as a "3." (*Id*.)

At least eight individuals, consisting of five men and three women - including Swartz, were given the rank of 3. (DE # 30-3 at 19.) A chart was then compiled after the rankings were made, which indicated that Swartz was to be reassigned after her upcoming

9

maternity leave. (*Id.*)  Yet, Snyder did not mention Swartz's intended reassignment in a June 27, 2006 email to Miller, detailing the personnel changes that Snyder felt were necessary in order to get Supply Management back on track. (Snyder Email, DE # 30-3 at 21-22.)  Snyder did, however, state that Swartz would likely take over the purchasing responsibilities previously held by one of two male employees who were to be removed and had received 3's in the employee ranking system. (*Id.*)

On December 21, 2006, Swartz took FMLA leave for the birth of her third child. (Swartz Request for Leave, DE # 30-3 at 25.)  Her expected return date to WNC was February 12, 2007. (*Id.*)

On January 22, 2007, Snyder met with Rob Hancock to determine how effectively Snyder's team was supporting WNC's engineering organization. (DE # 30-4 at 25.)  With regard to Swartz, Hancock stated that he had little contact with Swartz, but had accompanied her on a supplier visit and reported that she did fine. (*Id.*)  However, Hancock further opined that Swartz "just hasn't seemed to be there over the past several weeks, and that she is not very consistent." (*Id.*)

On January 24, 2007, after interviewing other members of the engineering organization,[4] Snyder compiled their opinions and noted that the managers felt like Swartz was a "fish out of water," with

---

4    In his deposition, Snyder testified that he held these meetings voluntarily and not as part of a reduction in force. (Snyder Depo. 84:10-13, 88:11-14, DE # 30-4.)  However, Snyder stated in his affidavit that in early 2007, he and Miller discussed positions that could be eliminated, including Swartz's, as part of a reduction in force. (Snyder Aff. ¶ 17, DE # 25-3.)

"[n]o urgency, no communication" who was "not positive at all, only here for a paycheck," and noted Snyder that "everyone [was] dissatisfied with her performance." (DE # 25-8 at 21-22.) In the same memo, Snyder gave negative assessments of other employees working within the department, including Scheffee.[5] (*Id*. at 21.)

Thereafter, on February 12, 2007, when Swartz returned from her FMLA leave, her employment with WNC was terminated. (Swartz Depo. 62:18-22, DE # 30-2.) Swartz was informed that her termination was due to a reduction in force. (*Id*.)

It is unclear who made the recommendation to terminate Swartz's employment. Miller testified that, as Swartz's supervisor, Snyder would have made the recommendation to him, and then Miller would approve the termination and make the recommendation to the personnel department. (Miller Depo. 119:21-120:12, DE # 30-3.) However, Snyder testified that he neither recommended that Swartz be fired, nor approved her termination.[6]

---

5     Snyder wrote that his investigation revealed the following opinions about Scheffee: "They feel he is very slow. They don't think he fully grasps issues. They think he lack's (sic) big picture understanding. They do not feel he is a purchasing professional . . . . They all felt like he is a fish out of water in purchasing." (DE # 25-8 at 21.) Two days before, Snyder wrote that Rob Hancock had recently "seen improvement" in Scheffee and that he seemed to be doing better. (DE # 30-4 at 25.) Snyder noted that Hancock had previously called Scheffee a "black hole" and "not a great follow-up" but now Hancock stated that Scheffee "is showing improvement." (*Id*.) Following these evaluations, Scheffee was placed on a Performance Improvement Plan. (Request for Admissions ¶ 11, DE # 30-9.)

6     In their reply brief, WNC argues that their position statement to the EEOC does not constitute admissible evidence. An EEOC position statement is admissible to the extent that it is inconsistent with other evidence in the record. *See Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F.Supp.2d 919, 937 (N.D. Ill. 2005); *Frazier v. Indiana Dep't of Labor,* No. IP01-198CTK, 2003 WL 21254567 at *4 (S.D. Ind. Mar. 24, 2003). Here, WNC's EEOC position statement claims that Snyder made the decision to fire Swartz. However, Snyder and Miller's depositions already contain an inconsistency on this issue. *Compare* Miller Depo. 119:21-120:12, DE #

(Snyder Depo. 80:11-16, DE # 30-4.)

Following Swartz's termination, Denise McAinish was internally transferred into Swartz's former department in order to serve as a buyer; however, Snyder testified that no one replaced Swartz and and that her duties were divided up among all remaining members of her department. (*Id*. at 97:12-98:13.)

Counts I, II, IV, and V

In her response to summary judgment, Swartz seeks to dismiss counts I, II, IV, and V of her complaint. (DE # 28 at n.1.) Generally, an attempt to voluntarily dismiss only certain counts of a complaint should be treated as a motion to amend the complaint rather than a motion to dismiss. *See* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2362 (3d ed. 2009) ("A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15.")  However, Swartz did not move to withdraw part of her claims until after WNC had moved for summary judgment and incurred the costs of defending against those claims for nearly a year and a half.  Because "it would not be fair at this point to leave open even a remote

---

30-3 (stating that Snyder made the decision to fire Swartz) *with* Snyder Depo. 80:11-16, DE # 30-4 (stating that Snyder did not make the decision to fire Swartz). Because WNC's EEOC position statement merely echos the version of events already outlined in Miller's deposition, it is "a needless presentation of cumulative evidence and thus inadmissible pursuant to Rule 403." *Gage*, 365 F.Supp.2d at 937. (Internal quotation omitted).

possibility that defendants might face this claim in some other forum," *Bibbs v. Newman*, 997 F.Supp. 1174, 1177 (S.D. Ind. 1998), Swartz's complaint will be deemed amended to remove counts I, II, IV, and V, and those counts are dismissed with prejudice.

<u>Violation of the Pregnancy Discrimination Act</u>

Swartz attempts to prove discrimination on the basis of her pregnancy via the *McDonnell Douglas* "burden shifting" method, requiring her to prove at the outset that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) WNC treated similarly situated employees outside of her protected class more favorably. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008). In this case, however, a rigid application of *McDonnell Douglas* will not do because Swartz was allegedly terminated as part of a reduction in force. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406 (7th Cir. 2007) (quoting *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577 (1978) ("the method of inquiry established by *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic.'")). In such a situation, courts employ a modified version of the *McDonnell Douglas* framework, which replaces the fourth prong with a requirement that Swartz show that "her duties were absorbed by employees not in the protected classes." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690-91 (7th Cir. 2006).

In Swartz's case, the distinction is irrelevant since her claim fails before reaching the forth prong of *McDonnell Douglas*. Based upon the undisputed facts, Swartz cannot show that she was meeting her employer's legitimate expectations at the time she was terminated.

Swartz argues that her 2006 performance review and the absence of any formal reprimand prior to her employment termination prove that she was meeting WNC's legitimate expectations. Yet, Swartz's 2006 performance review is irrelevant to the present inquiry since the Seventh Circuit Court of Appeals has repeatedly held that "an employee must be meeting her employer's expectations *at the time of discharge*." *Spector v. U.S. Bank Nat'l Ass'n*, 286 Fed. Appx. 333, 335, No. 06-4115, 2008 WL 2705659 at *3 (7th Cir. July 11, 2008) (emphasis added) (citing *Johal v. Little Lady Foods, Inc.,* 434 F.3d 943, 946 (7th Cir. 2006)). Therefore Swartz must show that she was meeting WNC's employment expectations in or around February 2007. Since Swartz began FMLA leave on December 21, 2006, a showing that she was meeting WNC's employment expectations at that time would likely suffice. Yet, the record is devoid of evidence that would support such a finding.

For example, the fact that Swartz never received a Performance Improvement Plan or any other reprimand for poor performance from her supervisors is not evidence that she was doing a good job. This is especially true given that her employment was terminated due to a reduction in force. Even if Swartz would not have been fired under normal circumstances "[i]n a reduction in force,

14

someone has to go. It is usually the least qualified or least productive employee." *Merillat*, 470 F.3d at 693 (citing *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573 (7th Cir. 1998)).

Internal memos dating back to August of 2006 indicate that WNC was not satisfied with certain aspects of Swartz's job performance, namely her "lack of daily job performance, poor attitude, poor teamwork and overall cooperation." (Miller Email, DE # 25-7 at 14-15.) Moreover, after September, it is undisputed that Swartz was performing the duties of a buyer while drawing the salary of a Commodity Supervisor. (Swartz Depo. 97:24-98:13, DE # 25-5.) Additionally, Swartz received the lowest possible rank in the employee ranking system, indicating that she was a low performer. (DE # 30-3 at 19.) Under these circumstances, no reasonable fact finder could conclude that Swartz was meeting her employer's legitimate performance expectations.[7]

Therefore, Swartz has failed to present a prima facie case of discrimination in violation of the PDA, and WNC is entitled to summary judgement on Count VI of Swartz's complaint.

Violations of the Family Medical Leave Act

Swartz also claims that WNC discriminated against her and failed to restore her to her previous position in violation of the

---

7  Although the record reveals an inconsistency regarding who made the decision to terminate Swartz's employment, this is not a genuine issue of material fact that precludes summary judgment. The record establishes that Swartz was not meeting WNC's expectations beginning sometime around August of 2006. The issue of whether Miller or Snyder made the decision to terminate Swartz's employment has no bearing upon this finding.

15

FMLA.[8] In making the claim, Swartz may proceed under the direct or indirect methods of proof familiar from employment discrimination cases. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). Here, Swartz attempts to prove her case via the indirect method, using the same evidence she presented in support of her PDA claim. *See supra*. Like her PDA claim, Swartz's FMLA discrimination claim fails for the reasons previously outlined by this Court, namely Swartz's inability to show that she was meeting WNC's legitimate performance expectations. *Id*.

As to her FMLA interference claim, Swartz bears the burden of proving the following: "(1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." *Smith*, 560 F.3d at 699. *See also Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009)("The burden to prove FMLA interference lies with the plaintiff-employee."). This case concerns the fifth element and, since Swartz was already on leave when she was fired, "the

---

8   WNC argues that Swartz improperly attempted to raise an FMLA retaliation claim for the first time in her brief in opposition to summary judgment. Had Swartz failed to properly plead the issue in her complaint, the Court would not consider the merits of her FMLA retaliation argument. *See Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). However, Swartz alleged in her complaint that WNC "discriminated against" her in violation of the FMLA. (Complaint at 4). Since the regulations supporting the FMLA treat the terms 'discriminated' and 'retaliated against' interchangeably, the Court will reach the merits of Swartz's arguments on this issue. 29 C.F.R. § 825.220(c) ("The Act's prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights."). *See also Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008).

benefit at issue is her right to reinstatement." *Id*. at 712.

Under the FMLA, an employee is only entitled to that which he or she "would have been entitled had the employee not taken the leave." 29 U.S.C.A. § 2614(a)(3)(B). In other words, "an employee is not entitled to return to her prior position if she would have been demoted or terminated regardless of whether she took FMLA leave." *Simpson*, 559 F.3d at 712 (citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008)). Thus, whether WNC violated the statute "turns on why the employee was not reinstated." *Kohls v. Beverly Enter. Wisconsin, Inc.*, 259 F.3d 799, 805 (7th Cir. 2001).

In Swartz's case, WNC claims that she was fired in February 2007 due to a reduction in force that began the summer before and continued after Swartz left the company. Swartz contends that her employment termination was not due to a reduction in force because other employees were fired four months earlier, in October, 2006. However, WNC does not allege that its reduction in force happened at once; to the contrary, WNC alleges that Larry Brooks' employment was terminated as part of the same reduction in force in November 2007, eight months after Swartz was fired. (Gipe Aff. ¶ 8, DE # 25-6; Brooks' Term., DE. 30-8.) Swartz has offered no evidence to rebut WNC's assertion that its reduction in force encompassed Swartz's firing in February 2007.

Nor has Swartz produced evidence showing that WNC's reasons for firing her were illegally motivated. *Simpson*, 559 F.3d at 713.

17

WNC, on the other hand, has put forth evidence showing that it was not pleased with Swartz's performance as early as August 2006, (Miller Email, DE # 25-7 at 14-15,) and that Swartz was performing the duties of a buyer while receiving the salary of a Commodity Supervisor. (Swartz Depo. 97:24-98:13, DE # 25-5). Even interpreting all inferences in Swartz's favor, based on the record before this Court, Swartz would have been fired regardless of whether she took FMLA leave. WNC is, therefore, entitled to summary judgment on count III of Swartz's complaint.

CONCLUSION

Based on the foregoing, WNC is entitled to judgment as a matter of law on Swartz's PDA and FMLA claims, and dismissal with prejudice on Swartz's other claims. Accordingly, WNC's Motion for Summary Judgment (DE # 23) is hereby **GRANTED** and the Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** all of Swartz's claims against WNC. The oral argument originally scheduled for July 22, 2009, is hereby **VACATED**. The Clerk is **ORDERED** to close this case.

**DATED: December 7, 2009**       /s/RUDY LOZANO, Judge
                                  **United States District Court**